UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| VANESSA SPAIN, as plenary guardian of the Estate of ALEXANDREA ELISE HEALY, a minor,<br><br>    Plaintiff,<br><br>v.<br><br>THE PRUDENTIAL INSURANCE COMPANY OF AMERICA,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Cause No. 09-cv-608 JPG<br>)<br>)<br>)<br>)<br>) |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on the motion for judgment on the pleadings and for summary judgment filed by defendant The Prudential Insurance Company of America ("Prudential") (Doc. 9). Plaintiff Vanessa Spain, guardian of the estate of Alexandrea Elise Healy, has responded to the motion (Doc. 10), and Prudential has replied to that response (Doc. 17).

**I.    Facts**

Stephen Ray Healy, father of Alexandrea Elise Healy, was employed by Continental Tire North America, Inc., a subsidiary of Continental Automotive, Inc. ("Continental"). As a part of Healy's benefits package, Healy was given basic accidental death insurance coverage of $40,000 under a plan ("Plan") underwritten by Prudential. Continental endorsed the Plan, automatically enrolled all of its full-time, non-union hourly employees in the Plan and paid all premiums for those employees.

On March 19, 2008, Healy died after his truck was swept by water off a road into a creek. Once in the creek, Healy and two passengers in the car were forced by rising, frigid floodwaters

to climb on top of the truck. At one point, both of Healy's passengers jumped into the floodwaters to retrieve a purse one of them had dropped in the water and were having difficulty getting back to the truck.. Healy jumped in to save them, but he and one of his passengers eventually drowned.

Spain, Alexandrea's mother and guardian, filed a claim on Alexandrea's behalf for accidental death benefits under the Plan. Prudential denied the claim on January 20, 2009, on the ground that Healy's death fell into the following exclusion: "A Loss is not covered if it results from . . . Being legally intoxicated or under the influence of any narcotic unless administered or consumed on the advice of a Doctor." Plan at 41-42. Prudential found that at the time of his death Healy was legally intoxicated and under the influence of Xanax, a prescription drug not prescribed by Healy's doctor. The denial letter informed Spain that she had a right to appeal the decision within 180 days of receiving the denial letter.

Spain did not appeal. Instead, in August 2009, she filed this lawsuit in the Circuit Court of the Second Judicial Circuit, Jefferson County, Illinois. She alleges Illinois state law claims against Prudential for breach of the accidental death insurance contract and bad faith failure to pay an insurance claim. Prudential removed the case to federal court on the basis of original federal question jurisdiction under 28 U.S.C. § 1331. It believed federal question jurisdiction was created by Spain's assertion of a claim for benefits that can only be brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*

Prudential filed this claim arguing that Spain's state law claims are preempted by ERISA and that any ERISA claim should be dismissed for failure to exhaust administrative remedies.

2

Spain argues that her claim may not be governed by ERISA[1], that she was not required to exhaust her administrative remedies under the Plan and that, even if she were required to exhaust, she should be excused because exhaustion would have been futile.

**II.    Analysis**

    A.    Preemption by ERISA

Federal Rule of Civil Procedure 12(c) governs Prudential's request for judgment on the pleadings as to Spain's state law claims based on preemption by ERISA. In ruling on a Rule 12(c) motion, the Court considers the complaint, answer and any written instruments attached to those pleadings, accepts all well-pleaded allegations in the complaint as true and draws all inferences in favor of the plaintiff. *See Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007); *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). Judgment on the pleadings is appropriate "[o]nly when it appears beyond a doubt that the plaintiff cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved." *Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2007); *accord Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). The Court now turns to the issue of ERISA preemption.

Congress enacted ERISA "to safeguard employees from the abuse and mismanagement of funds that had been accumulated to finance various types of employee benefits." *Massachusetts v. Morash*, 490 U.S. 107, 112-13 (1989) (citing *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 15 (1987)). To achieve this goal, "[i]t sets forth reporting and disclosure

---

[1] Despite this argument, she does not challenge the Court's jurisdiction to hear this case. As explained later in this order, Spain's claim for benefits indeed alleges a federal question under ERISA.

obligations for plans, imposes a fiduciary standard of care for plan administrators, and establishes schedules for the vesting and accrual of pension benefits." *Morash*, 490 U.S. at 113. ERISA covers welfare benefit plans, including accidental death insurance plans. *See* 29 U.S.C. § 1002(1); 29 C.F.R. § 2510.3-1(a)(2); *Morash*, 490 U.S. at 113; *see, e.g., Mers v. Marriott Int'l Group Accidental Death & Dismemberment Plan*, 144 F.3d 1014, 1017 (7th Cir. 1998).

To achieve uniform nationwide standards for employee benefit plans, ERISA contains a broad preemption provision that forecloses certain state law claims that "relate to" a plan governed by ERISA:

> [T]he provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter *relate to any employee benefit plan* described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

ERISA § 514(a) (emphasis added), codified at 29 U.S.C. § 1144(a); *see Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 138 (1990); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 99 (1983).[2]

A state law is considered to "relate to" an employee benefit plan if it "has a connection with or reference to such a plan" even if it is not specifically designed to affect the plan, does not have a direct effect on the plan, and is completely consistent with ERISA's substantive requirements. *Ingersoll-Rand*, 498 U.S. at 139 (internal quotations omitted). While subsequent case law has tightened the interpretation of "relate to," *see De Buono v. NYSA-ILA Med. & Clinical Servs. Fund,* 520 U.S. 806, 814 (1997); *California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A.*, 519 U.S. 316 (1997); *New York State Conf. of Blue*

---

[2]There are some express exceptions to this broad preemption provision such as, for example, state laws regulating insurance, banking, or securities and generally applicable state criminal laws. ERICA §§ 514(b)(2)(A) and (b)(4), codified at 29 U.S.C. §§ 1144(b)(2)(A) and (b)(4). None of those exceptions apply in this case.

*Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 658 (1995), it remains clear that "[t]he requisite connection exists under § 514(a) if a law . . . provides alternative enforcement mechanisms" to § 502(a) of ERISA, which contains a comprehensive enforcement scheme and which Congress intended to be the exclusive vehicle for actions by plan participants asserting claims for benefits. *Administrative Comm. of Wal-Mart Stores, Inc. v. Varco*, 338 F.3d 680, 689-90 (7th Cir. 2003) (citing *Travelers*, 514 U.S. at 658); *see Ingersoll-Rand*, 498 U.S. at 144; *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 52 (1987).

It is clear that Spain's breach of contract and bad faith claim "relates to" the Plan; they attempt to use an alternative mechanism to seek benefits under the Plan and penalties for failure to render those benefits in good faith. *See Pilot Life*, 481 U.S. at 47-48 (state claim for breach of contract and bad faith failure to pay insurance "relate to" employee benefit plan).

Spain argues, however, that the Plan is not an "employee welfare benefit plan" covered by ERISA because it falls within the "safe harbor" set forth by 29 C.F.R. § 2510.3-1(j). That regulation states, in pertinent part:

> For purposes of Title I of the Act and this chapter, the terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which
>
> > (1) No contributions are made by an employer or employee organization;
> >
> > (2) Participation [in] the program is completely voluntary for employees or members;
> >
> > (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and

> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j). This provision means, for example, that an employer can allow an employee to purchase a group insurance policy it does not endorse or sponsor and can collect premiums for that policy through payroll deductions without converting the policy to an ERISA plan. *See Gahn v. Allstate Life Ins. Co.*, 926 F.2d 1449, 1452 (5th Cir. 1991).

Here, the Plan itself demonstrates the safe harbor of 29 C.F.R. § 2510.3-1(j) does not apply. The Plan document shows that Continental was not simply a conduit for collection of accidental death insurance premiums but that it endorsed the Plan. Furthermore, the Plan indicates the basic accidental death insurance (the $40,000 benefit Spain seeks) was automatically provided to all full-time, non-union hourly employees and was funded by Continental, not its employees. Clearly the Plan does not fall within the safe harbor created by 29 C.F.R. § 2510.3-1(j). Thus, it is covered by ERISA.

For this reason, the Court will dismiss Spain's breach of contract (Count I) and insurance bad faith (Count II) claims. Whether it will grant leave to file an amended complaint alleging a claim for benefits under § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), will depend on whether such amendment would be futile in light of the exhaustion of remedies issue.

B.     Exhaustion of Remedies

Prudential requests summary judgment on Spain's claim for benefits because Spain did not exhaust the administrative appeal process in the Plan's summary plan description ("SPD"). Summary judgment is appropriate where "the pleadings, the discovery and disclosed materials

on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396.

"The text of 29 U.S.C. § 1132, providing for civil actions to redress violations of ERISA, does not address whether a claimant must exhaust her administrative remedies before filing suit in federal court." *Gallegos v. Mt. Sinai Med. Ctr.*, 210 F.3d 803, 807 (7th Cir. 2000). However, in light of § 503 of ERISA, 29 U.S.C. § 1133, which directs employee benefit plans to provide adequate written notice of the reasons for denials of claims by plan participants and to create procedures for the review of such denials of claims, the Seventh Circuit interprets ERISA as requiring exhaustion of internal plan remedies as a prerequisite to bringing suit under the statute. *Powell v. A.T. & T. Commc'ns, Inc.*, 938 F.2d 823, 826 (7th Cir. 1991). "[T]he decision to require exhaustion as a prerequisite to bringing suit is a matter within the discretion of the trial court." *Salus v. GTE Directories Serv. Corp.*, 104 F.3d 131, 138 (7th Cir. 1997) (quoting *Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 650 (7th Cir. 1996)); *accord Gallegos*, 210 F.3d at 808.

In general, "implementing the exhaustion requirement enhances the ability of plan fiduciaries to expertly and efficiently manage their plans by preventing premature judicial intervention and because fully considered actions by plan fiduciaries may assist the courts when

they must resolve controversies." *Powell*, 938 F.2d at 826 (citing *Kross v. Western Elec. Co.*, 701 F.2d 1238, 1244 (7th Cir. 1983)). Exhaustion benefits the district court by clarifying the issues and disputes before it. *Lindemann*, 79 F.3d at 650. Furthermore, exhaustion may result in the non-judicial settlement of the plan participant's claims. *Powell*, 938 F.2d at 826. Therefore, it is not lightly set aside.

However the court may excuse an ERISA plaintiff's failure to exhaust internal plan remedies where there is a lack of meaningful access to review procedures or where pursuing internal plan remedies would be futile. *Robyns v. Reliance Standard Life Ins. Co.*, 130 F.3d 1231, 1236 (7th Cir. 1997). In order to demonstrate a failure to exhaust is excused on the basis of futility, a plaintiff must show that it is *certain* her claim will be denied on appeal; mere doubts about the success of an appeal are not enough. *Jin Zhou v. Guardian Life Ins. Co. of Am.*, 295 F.3d 677, 680 (7th Cir. 2002).

In the case at bar, the Plan itself describes no administrative appeal process. However, the SPD provides for a two-level appeal process:

> If your claim for benefits is denied . . ., you or your representative may appeal your denied claim in writing to Prudential within 180 days of the receipt of the written notice of denial. . . .
>
> * * *
>
> If the appeal of your benefit claim is denied . . ., you or your representative may make a second, voluntary appeal of your denial in writing to Prudential within 180 days of the receipt of the written notice of denial or 180 days from the date such claim is deemed denied. . . .
>
> * * *
>
> Your decision to submit a benefit dispute to this voluntary second level of appeal has no effect on your right to any other benefits under this plan. If you elect to initiate a lawsuit without submitting to a second level of appeal, the plan waives

> any right to assert that you failed to exhaust administrative remedies. . . .
>
> * * *
>
> . . . . If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or Federal court. . . .

SPD. A distinctive statement in the SPD explicitly disclaims that the SPD is part of the Plan.

Spain first argues that exhaustion is not required because the Plan itself provides no administrative appeal process. In support of her argument, Spain cites a number of cases holding that the reservation of discretion to a plan administrator contained in an SPD but not the plan itself was ineffective to confer discretion on the administrator. *See Hopkins v. Prudential Ins. Co. of Am.*, 432 F. Supp. 2d 745 (N.D. Ill. 2006). The *Hopkins* court held that although the discretionary language was contained in the SPD, the plan language controlled. *Id.* at 757. The court noted that the SPD could not be used to convey discretion when the plan itself is silent. *Id.* (citing *Akhtar v. Continental Cas. Co.*, 2002 WL 500544, *4 (N.D. Ill. 2002)). This result is consistent with the general rule that:

> When . . . the plan and the summary plan description conflict, the former governs, being more complete – the original, as it were, which the summary plan description excerpts and translates into language that may be imprecise because it is designed to be intelligible to lay persons – unless the plan participant or beneficiary has reasonably relied on the summary plan description to his detriment.

*Health Cost Controls of Illinois, Inc. v. Washington*, 187 F.3d 703, 711 (7th Cir. 1999) (citing *Mers v. Marriott Int'l Group Accidental Death & Dismemberment Plan*, 144 F.3d 1014, 1022-24 (7th Cir. 1998)); *see Schwartz v. Prudential Ins. Co.*, 450 F.3d 697, 699 (7th Cir. 2006) (SPD governs over plan only when participant reasonably relies on SPD to his detriment).

Prudential argues that the Plan and the SPD comply with ERISA's requirements, so

exhaustion using the process outlined in the SPD is required.  It argues that the administrative appeal process described in the SPD brings the Plan into compliance with § 503 of ERISA, 29 U.S.C. § 1133, which requires every employee benefit plan to "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2).  It further notes that the SPD satisfies § 102(a) of ERISA, 29 U.S.C. § 1022(a), because it contains "the procedures to be followed in presenting claims for benefits under the plan" and "the remedies available under the plan for the redress of claims which are denied in whole or in part." 29 U.S.C. § 1022(b).  Prudential also claims it has satisfied 29 C.F.R. § 2560.503-1(b), which provides, "Every employee benefit plan shall establish and maintain reasonable procedures governing the filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations," 29 C.F.R. § 2560.503-1(b), and must include "all claims procedures . . . and the applicable time frames . . . as part of a summary plan description," 29 C.F.R. § 2560.503-1(b)(2).

  Spain is correct that the SPD cannot add a mandatory administrative appeal process to the Plan where the Plan is silent and then argue that Spain failed to exhaust those administrative remedies.  The cases Spain cites demonstrate that the SPD can only add terms to the Plan if they are beneficial to Spain or if Spain detrimentally relied on them.  While those cases address the attempt to convey discretion to a plan administrator in an SPD where it is not conveyed in a plan, the same principles hold true in the context of providing an administrative appeal process.  The Plan is the original insurance agreement, and the SPD is supposed to describe the Plan, not supplement it or amend it with new and additional substantive terms.  Unless the employee

detrimentally relied on the new SPD terms or the terms are more favorable to the employee, they cannot be added to the Plan for the benefit of the Plan. For example, had Spain used the administrative appeal process and delayed filing her suit until the process was exhausted, she could rely on the SPD's creation of the appeal process if Prudential argued the appeal process was not part of the Plan and attempted to invoke a statute of limitations defense.

That is not the case here. In the case at bar, contrary to Prudential's assertions, the Plan does *not* afford a reasonable opportunity to appeal an adverse decision. *See* 29 U.S.C. § 1133(2). In fact, the Plan says nothing about how to appeal an adverse decision. Only the SPD discusses the appeal process, and to the extent it implies the appeal process is mandated by the Plan itself, it is incorrect or misleading. The Plan simply contains no administrative appeal process, and the SPD cannot add one where Spain did not detrimentally rely on it and where she would be harmed by it.

For this reason, amendment of the complaint to allege a claim for benefits under § 502(a)(1)(B) of ERISA, 29 U.S.C. 1132(a)(1)(B), would not be futile, and Prudential is not entitled to summary judgment on such an ERISA claim.

### III.   Conclusion

For the foregoing reasons, the Court:

- **GRANTS in part** and **DENIES in part** Prudential's motion for judgment on the pleadings and for summary judgment (Doc. 9). The motion is **GRANTED** to the extent it seeks to dismiss Spain's state law claims (Counts I and II) and **DENIED** in all other respects;

- **DISMISSES** Spain's claim for breach of contract (Count I) and insurance bad faith (Count II); and

- **ORDERS** that Spain shall have up to and including March 19, 2010, to file an amended complaint that asserts a claim for benefits under § 502(a)(1)(B) of ERISA, 29 U.S.C. 1132(a)(1)(B).

**IT IS SO ORDERED.**
**DATED:  February 22, 2010**

s/ J. Phil Gilbert
**J. Phil Gilbert**
**United States District Court Judge**
